Johnny Joe McGUIRE, Plaintiff in Error,

v.

The STATE of Oklahoma, Defend-
ant in Error.

No. A—17108.

Court of Criminal Appeals of Oklahoma.

May 10, 1972.

James D. Bass, Tulsa, for plaintiff in er-
ror.

Darrell R. Matlock, Jr., Tulsa, for de-
fendant in error.

BUSSEY, Presiding Judge:

Johnny Joe McGuire, hereinafter re-
ferred to as defendant, was charged, tried
and convicted in the Municipal Criminal
Court of the City of Tulsa, Oklahoma, for
the offense of killing a brown domesticated
dog; his punishment was fixed at a fine
of Ten Dollars ($10.00) and court costs,
and from said judgment and sentence, a
timely appeal has been perfected to this
Court.

At the non-jury trial, Tommy Britt, age
thirteen, testified that on February 13,
1971, he was riding his bike down the
street from where the defendant lived. He
heard a shot and rode his bicycle toward
the direction of the shot. He observed
Curtis Kendall's dog lying in the defend-
ant's yard shaking and bleeding. He pro-
ceeded to Kendall's house and told him
what he had observed. Kendall then went
to the defendant's house where he had a
conversation with him. Defendant had a
gun on his arm which looked like a flint-
lock. He could not understand much of
the conversation between Kendall and the
defendant with the exception that he heard
Kendall ask the defendant if he was going
to put the dog out of his misery. Kendall
then took the dog out in the road by the
railroad track and layed him there.

Curtis Kendall testified that on the day
in question he owned a little dog named
Max who was part terrier and part boxer.
He testified that the dog was usually kept
in the back fenced yard but on the day in
question a bunch of kids were playing in
the back yard and the dog got out. He
heard a shot and shortly thereafter Tommy
Britt rode up and told him what he had ob-
served. He proceeded to the defendant's
home, which was approximately two blocks
away, and observed his dog lying in front
of his car bleeding. He asked the defend-
ant who shot the dog and why and the de-
fendant replied, "I did. I was shooting at
another dog and hit yours." He testified
that he was very angry and cursed at the
defendant and said, "You could at least put
the dog out of his misery" because it was
lying there kicking and shaking. He left
the scene and returned in a few minutes
observing the dog now lying out there on
the railroad right of way. The dog was
stiff as a board and was dead. He put the
dog in the car, carried it to his house,
showed it to the police and then buried it.
He testified that approximately ten min-
utes lapsed from the time he observed the
dog first wounded until he buried it. He

further testified that the kids in the neighborhood had played with the dog and it had never bitten anyone.

Billie Kendall, Curtis' wife, testified that she went to the defendant's house with her husband. She asked the defendant if he had killed the dog and he said, "Yes." (Tr. 29) She testified that the dog was dead.

The defendant testified that he got off work at approximately 1:00 a. m. the morning of February 13. When he arrived home there were a bunch of dogs in his front yard after a female dog who was in heat. He got an old mop handle from the back of his car and swatted three or four of the dogs, chasing them out of his yard. That morning his four-year-old boy, "came. in and woke me up, and he wanted to go out and play on his swing." (Tr. 33) He testified that he told him to go on out and play. The boy came running back into the house and said, "Daddy, Daddy, dogs." He testified that he went out and threw a pop bottle at the dogs. He returned to the house and got an old muzzle loading .45 caliber rifle and, "I put some black powder in it and took some toilet paper for wadding. And that way it would make a noise and sting them and scare them off." (Tr. 40) The boy went out to play again and a few minutes later came running in crying again. He jumped up, grabbed the gun and ran outside. He observed a large part German Shepherd dog running behind his car. He pointed the gun intending to shot between the dog's legs when the little dog ran in his line of fire. He testified that he did not intend to shoot the little dog. Shortly thereafter Kendall came to his house and started using abusive language. He testified that Kendall left and he placed the dog at the edge of his property. The dog was still alive at this time. Shortly thereafter Kendall and a lady returned and again used abusive language. On re-cross examination, he testified that the dog was "whimpering, whining, kicking, laying on its side" when he left it. (Tr. 46)

Notwithstanding the excellent, extensive brief filed in behalf of the defendant, we have examined each of the propositions asserted and are of the opinion that each is without merit. The defendant elected to be tried by a judge rather than a jury. The judge thus had the same province of the jury to weigh the evidence and determine the facts. We are of the opinion that the evidence supports the trial court's verdict. The judgment and sentence is affirmed.

SIMS and BRETT, JJ., concur.